UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

DIANE PENNINGTON, *et al.*,

Plaintiffs,

v.

ISLAMIC REPUBLIC OF IRAN,

Defendant.

Civil Action No. 19-796 (JEB)

## MEMORANDUM OPINION

On June 24, 2021, this Court entered a default judgment on liability against Defendant Islamic Republic of Iran for a series of sixteen terrorist attacks against members of the United States military in Iraq. Plaintiffs — the estates and families of the victims, who were either killed or wounded, and one wounded servicemember — now seek damages of over $1 billion. While the Court certainly does not minimize the pain and suffering of these Plaintiffs, the amounts they have sought here are staggering. The Court will pare back many of the requests and ultimately enter judgment in the amount of $273 million, far from an inconsiderable sum.

**I.      Legal Standard**

The Foreign Sovereign Immunities Act, 28 U.S.C. § 1604, contains a "terrorism exception," which provides federal courts with jurisdiction over suits where plaintiffs seek money damages from a foreign state for "personal injury or death that was caused by an act of torture, extrajudicial killing, aircraft sabotage, hostage taking, or the provision of material support or resources for such an act." 28 U.S.C. § 1605A(a)(1). It also creates a cause of action for "national[s] of the United States" to sue foreign states that are designated by the U.S. government as sponsors of terrorism and perform or materially support the acts described in 28

1

U.S.C. § 1605A(a)(1).  Id. § 1605A(c).  The statute specifies that, "[i]n any such action, damages may include economic damages, solatium, pain and suffering, and punitive damages."  Id.; accord Fraenkel v. Islamic Republic of Iran, 892 F.3d 348, 353 (D.C. Cir. 2018).

Plaintiffs may recover damages by showing "that the projected consequences are reasonably certain (*i.e.*, more likely than not) to occur, and [proving] the amount of damages by a reasonable estimate."  Fraenkel, 892 F.3d at 353 (quoting Hill v. Republic of Iraq, 328 F.3d 680, 684 (D.C. Cir. 2003)).  While these requirements create "some protection against an unfounded default judgment," plaintiffs need not produce "more or different evidence than [a court] would ordinarily receive; indeed, the quantum and quality of evidence that might satisfy a court can be less than that normally required."  Id. (citation omitted).

**II.   Analysis**

While establishing liability was relatively straightforward, that is not the case with regard to the amount of damages to award.  See Pennington v. Islamic Republic of Iran, No. 19-796, 2021 WL 2592910 (D.D.C. June 24, 2021).  As this Court noted in a similar case, "The valuation of serious psychological injuries among different family members is an inherently delicate task, not susceptible to rote calculations."  Schertzman Cohen v. Islamic Republic of Iran, No. 17-1214, 2019 WL 3037868, at *6 (D.D.C. July 11, 2019).  Indeed, "assessing damages for pain and suffering is an imperfect science, as no amount of money can properly compensate a victim for the suffering he or she endures during and after an attack."  Goldstein v. Islamic Republic of Iran, 383 F. Supp. 3d 15, 19 (D.D.C. 2019).

Plaintiffs here include a wounded servicemember and the parents, stepparents, spouses, siblings, stepsiblings, and children of wounded and killed servicemembers.  They seek multiple types of damages: solatium damages for family members of those wounded and killed, direct

damages and economic losses for one wounded servicemember, economic losses for estates of killed servicemembers, pain and suffering for the one surviving servicemember and the estates of two others killed, prejudgment interest, and punitive damages. See ECF No. 54-1 (DJ Mot. for Damages) at 2–17.  The Court considers each in turn.

    A.  <u>Solatium Damages</u>

As recently defined by the D.C. Circuit in <u>Fraenkel</u>, solatium damages seek to compensate victims for the "[m]ental anguish, bereavement and grief" resulting from a loved one's death or injury.  892 F.3d at 356–57; see also <u>Valore v. Islamic Republic of Iran</u>, 700 F. Supp. 2d 52, 85 (D.D.C. 2010).  To determine proper solatium awards, the <u>Fraenkel</u> panel recognized that "District Court judges invariably must exercise discretion in determining damages awards under the FSIA."  See 892 F.3d at 361.  Appellants there had argued that the district court "broke from precedent" by awarding solatium damages "dramatically lower" than those received by similarly situated plaintiffs.  <u>Id.</u> (citation omitted).  The D.C. Circuit rejected their claim.  It noted that "many FSIA decisions" followed the solatium-damage ranges summarized in <u>Estate of Heiser v. Islamic Republic of Iran</u>, 466 F. Supp. 2d 229 (D.D.C. 2006), which recommended awarding around $2.5 million for siblings of deceased victims, $5 million for parents, and $8 to $12 million for spouses.  See <u>Fraenkel</u>, 892 F.3d at 361.  This Court, too, will follow that formula for the families of deceased victims, as Plaintiffs propose.  See DJ Mot. at 3 (proposing $8 million for spouses, $5 million for parents, $2.5 million for siblings, and $3 million for children); <u>see also</u> <u>Valore</u>, 700 F. Supp. 2d at 79–80 (stepsibling and stepfather who were equivalent to immediate family eligible to bring claims).

There are also family members of <u>wounded</u> servicemembers (Michelle Wager, Jerral Hancock, and Adam Egli), and Plaintiffs propose half the above sums for them.  <u>Id.</u>  This is

consistent with the holdings of other courts in this district. See, e.g., Moradi v. Islamic Republic of Iran, 77 F. Supp. 3d 57, 72–73 (D.D.C. 2015) (awarding wife of injured servicemember $4 million); Owens v. Republic of Sudan, 71 F. Supp. 3d 252, 260–61 (D.D.C. 2014). The Court will thus award the two wives (Rachel Lambright and Danielle Egli) $4 million each and the parent (Melinda Igo) $2.5 million. This leaves the children of Adam Egli and three siblings of Michelle Wager.

In fashioning equitable solatium awards, the Court relies on the factors our Circuit instructed courts to consider in Fraenkel. See 892 F.3d at 359 ("On remand, the District Court should apply the considerations outlined in [Flatow v. Islamic Republic of Iran, 999 F. Supp. 1, 30–32 (D.D.C. 1998),] . . . to determine the appropriate amounts of solatium damages."). Among those factors, the Court of Appeals highlighted two: "[h]ow the claimant learned of" the directly injured plaintiff's injuries and the "nature of the relationship" between the claimant and the directly injured plaintiff. Id. at 357 (quoting Flatow, 999 F. Supp. at 30–31).

For the Egli children, they were infants at the time of the incident: seven months and two years old, respectively. See ECF No. 54-2 (Declaration of Daniel Alberstone), Exhibit 8(b) (Declaration of Danielle Egli) at 2. As they had no independent recollection of the attack, they cannot recover for the psychological pain they suffered from learning of the event. They obviously have to continue to live with the effects on both their parents, so the Court awards each $750,000 — viz., half of the normal amount for children of survivors. Cf. Davis v. Islamic Republic of Iran, 882 F. Supp. 2d 7, 15 (D.D.C. 2012) (children born after event not entitled to recover).

The Wager siblings are Alicia Igo, Ashley Lewis, and Devin Igo. All three submitted identical declarations stating that they were "unable to provide a written Declaration describing

[their] experience" because they understandably do "not want to revisit" the memories of the attack on their sister.  See Alberstone Decl., Exhs. 17(b) (Declaration of Alicia Igo) at 1, 17(c) (Declaration of Ashley Lewis) at 1, 17(d) (Declaration of Devin Igo) at 1.  In such a circumstance and with little else to go on regarding even the siblings' relationship to Wager, the Court will award each $500,000, as opposed to the $1.25 million that can be available to siblings.  Cf. Roth v. Islamic Republic of Iran, 78 F. Supp. 3d 379, 403 (D.D.C. 2015) ("As for siblings, testimony proving a close emotional relationship will usually be sufficient to sustain an award of solatium damages.").

      The last item in this category is a request for an upward adjustment of between $500,000 and $2 million for eight of the family members — four spouses, two parents, and two children.  "When courts award upward departures, they usually do so because of an unusual circumstance beyond the ordinary anguish that results from losing a family member."  Selig v. Islamic Republic of Iran, No. 19-2889, 2021 WL 5446870, at *15 (D.D.C. Nov. 22, 2021).  Plaintiffs contend that such a departure is merited for three spouses because they "have suffered not only the loss of their husbands, but also the loss of being able to have children due to the Defendant's wrongful conduct."  DJ Mot. at 4.  The opportunity to have children is a principal boon for many married couples, which is precisely why the spousal amounts are so high.  These wives, furthermore, do not aver that they are unable to have children at all, just not with their husbands.  No adjustment on this basis is warranted.  See Heiser, 466 F. Supp. 2d at 315, 335 (awarding standard $8 million to spouses who had not been able to have children with deceased servicemembers).

      Other relatives of wounded and killed servicemembers seek an upward adjustment on the ground that their lives spiraled downward after the attack, leading to divorce and addiction in one

case and other mental-health issues in other cases.  See DJ Mot. at 5–7.  Once again, the Court does not see a basis to deviate from the already-substantial awards, which take into consideration the likelihood of serious detrimental effects from these events on families.  See, e.g., Acosta v. Islamic Republic of Iran, 574 F. Supp. 2d 15, 30 (D.D.C. 2008) (awarding standard $8 million to spouse of terrorism victim "to compensate her for emotional distress and loss of consortium caused by the death of her husband"); Selig, 2021 WL 5446870, at *15 (not deviating from baseline parental damages despite "terrible suffering and the close relationship that" parent had with deceased child); cf. Belkin v. Islamic Republic of Iran, 667 F. Supp. 2d 8, 23–24 (D.D.C. 2009) (providing $2 million enhancement in extreme circumstance where spouse had to view deceased "wife's severely disfigured body shortly after the bombing occurred").  Two other family members learned that "the person who detonated the EFP device was dancing as the bomb went off."  DJ Mot. at 6.  While another's glee in their suffering is no doubt painful, it hardly justifies an upward departure from the significant amount already awarded.  The Court, accordingly, will not award any upward adjustments.

      B.  Egli Damages

Next up are the direct damages and economic losses for one surviving servicemember, Adam Egli.  The former type of damages is intended to compensate attack survivors based on factors including "the severity of the pain immediately following the injury, the length of hospitalization, and the extent of the impairment that will remain with the victim for the rest of his or her life."  O'Brien v. Islamic Republic of Iran, 853 F. Supp. 2d 44, 46 (D.D.C. 2012) (citations omitted); accord Wultz v. Islamic Republic of Iran, 864 F. Supp. 2d 24, 37 (D.D.C. 2012).  Over the years, courts have developed a general framework for awarding direct-injury damages.  They begin "with the baseline assumption that persons suffering substantial injuries in

terrorist attacks are entitled to $5 million in compensatory damages." Wultz, 864 F. Supp. 2d at 37–38 (emphasis added).

Plaintiffs seek no less than $30 million for Egli for direct injuries and almost $1.5 million in economic losses. Egli certainly suffered serious injuries: he has required six to seven surgeries on his left knee, including a reconstruction; he has shrapnel in his back; and he sustained a concussion, hearing loss, and tinnitus. See Alberstone Decl., Exh. 8(a) (Declaration of Adam Egli) at 3–4. These have also caused emotional and psychological damage from which he still suffers. Such harms are precisely in line with the $5 million awarded for substantial direct injuries, and the Court will award that amount. Wamai v. Republic of Sudan, 60 F. Supp. 3d 84, 92–93 (D.D.C. 2014), aff'd in part, vacated in part on other grounds sub nom Owens v. Republic of Sudan, 864 F.3d 751, 825 (D.C. Cir. 2017) (victims who suffered injuries similar to those for which other courts had awarded the "baseline" of $5 million — including "vision impairment, many broken bones, severe shrapnel wounds or burns, lengthy hospital stays . . . and permanent injuries" — received that baseline amount).

As to economic loss, which is recoverable, see Murphy v. Islamic Republic of Iran, 740 F. Supp. 2d 51, 77 (D.D.C. 2010), the Court has insufficient evidence to make an award. Economic-loss damages "may be proven by the submission of a forensic economist's expert report." Roth, 78 F. Supp. at 402. In determining the amount of such damages based on lost future earnings and other benefits, "the Court shall take account of the reasonableness and foundation of the assumptions relied upon by the expert." Id. A forensic economist, Donald L. Frankenfeld, has submitted an estimate of economic loss for Egli of $1,463,428. See Alberstone Decl., Exh. 1(b) (Expert Report of Donald L. Frankenfeld) at 1–7 & Appendix J. This analysis is based on 1) the earnings, fringe benefits, and retirement benefits from the military that Egli

would have received had he completed 20 years of service, plus 2) his non-military earning capacity and fringe benefits subsequent to military service, but less 3) his mitigation capacity based on current employment. Id. This methodology generally comports with how economic loss has been calculated in similar cases. See, e.g., Murphy, No. 06-596, ECF No. 55-1 (D.D.C. June 10, 2010) (calculating economic loss for injured servicemember).

Frankenfeld's analysis, however, does not address how the relevant earnings estimates were reached beyond noting that they were "based upon authoritative government statistical sources" and Egli's individual circumstances. See Frankenfeld Rep., Appendix J at 1. In particular, it is unclear whether Egli's earnings are calculated pre- or post-tax and what factors the estimates of his non-military earnings are based on (*e.g.*, his age, education, experience). See No. 06-596, ECF No. 55-1 (calculating injured servicemember's lost earnings after federal, state, local, and social-security taxes). The Court will give leave to file an amended motion clarifying these points.

  C. Estates' Economic Losses

Plaintiffs' next category of damages encompasses economic losses to the estates of killed servicemembers. Here, there are nine estates, which each seek between $787,809 and $2,516,046 in damages. Estates may also recover damages for the "loss of accretions to the estate resulting from the wrongful death of decedent in the attack." Murphy, 740 F. Supp. 2d at 78. Again, the Court finds that additional information is required to assess the expert's estimates. First, clarification is needed as to whether lost earnings are calculated pre- or post-tax, and, if the former, whether taxes are factored into the estimates for personal consumption. See, e.g., No. 06-596, ECF No. 57-1 (D.D.C. July 22, 2010) (economic-loss report for estate of victim of 1983 Beirut bombing providing estimates of earning losses after taxes and personal consumption); see

also Heiser, No. 00-2329, ECF No. 74 (Apr. 1, 2004) at 288 (calculating economic loss of decedents by subtracting both amount of personal maintenance and federal and state taxes).

Second, there is considerable unexplained variation in estimates of personal consumption both among the decedents in this case and in comparison to estimates in other similar cases. For example, the share of personal consumption for Jason Merrill, who was a 22-year-old, unmarried E-5 sergeant when he died, is 68.03%, while the share for Joseph Richard III, a 27-year-old, married E-5 sergeant is 26.68%. Compare Frankenfeld Rep., Appendix F at 2, with id. Appendix I at 2; see also id. at Appendix B at 2 (personal consumption of 11.0% for 28-year-old E-6 staff sergeant with wife and children); Roth, No. 11-1377, ECF No. 34-5 (Oct. 2, 2014) (economic-loss report placing personal-consumption expenditure share at 44.4% to 73.4%).

Finally, the economic losses for the estate of Rudy Guerrero Mesa "are largely a function of diminished pension payments to his surviving widow, which in turn depends upon which payment option Mr. Mesa choose [*sic*] prior to his death." Frankenfeld Rep., Appendix D at 1. Frankenfeld's analysis was "based upon a reasonable estimate," id., but given that Mesa's estate should have access to information on which plan was actually chosen, the Court requires that information. If Plaintiffs resubmit this material, the Court will look again at the appropriate economic losses for the estates.

    D.  Pain and Suffering

Plaintiffs also seek an award to two estates for pain and suffering in the amount of $18 million each. More specifically, Joseph Richard survived for 75 minutes following the EFP attack, and Jason Merrill survived for several minutes after the blast that killed him. See DJ Mot. at 14. There is no evidence that either man was conscious during the time between the attack and his death. In addition, Plaintiffs argue that "[a]vailable scientific data indicates trauma victims

9

experience pain and psychological trauma following clinical death for a period of time between two and 10 minutes." Id. at 14 (citing Alberstone Decl., Exh. 3(b) (Independent Medical Report) at 1–2). Yet, given that fact, it is unclear why Plaintiffs would not also be seeking pain-and-suffering damages for all of the estates of individuals who were killed instantaneously, unlike Richard and Merrill.

In addition, the only case Plaintiffs cite is Pugh v. Socialist People's Libyan Arab Jamahiriya, 530 F. Supp. 2d 216 (D.D.C. 2008), in which the victims of an aircraft bomb suffered grievous physical and psychological injuries from the time the bomb exploded until impact on the ground, during which period they were fully conscious. Id. at 220-21. They cite no other case for the award of such damages.

Given that Richard survived for 75 minutes, certainly in great pain to the extent he was conscious of it, the Court will award his estate $1 million. See Selig, 2021 WL 5446870, at *13 ("a $1 million pain-and-suffering award is typically given to the estates of victims who quickly succumb to their injuries"); Eisenfeld v. Islamic Republic of Iran, 172 F. Supp. 2d 1, 8 (D.D.C. 2000) (awarding $1 million to victims for pain and suffering between explosion and death). No further award is justified for Merrill's estate.

E. Prejudgment Interest

Plaintiffs request prejudgment interest on top of their solatium and damage awards. The decision to award such interest "is subject to the discretion of the court and equitable considerations." Oldham v. Korean Air Lines Co. Ltd., 127 F.3d 43, 54 (D.C. Cir. 1997) (citation omitted); see also Forman v. Korean Air Lines Co., Ltd., 84 F.3d 446, 450 (D.C. Cir. 1996). "When an award without prejudgment interest fully compensates a plaintiff, an award of prejudgment interest no longer has the intended compensatory purpose and should be denied."

10

Wyatt v. Syrian Arab Republic, 908 F. Supp. 2d 216, 232 (D.D.C. 2012) (quoting Price v. Socialist People's Libyan Arab Jamahiriya, 384 F. Supp. 2d 120, 135 (D.D.C. 2005)). As have many courts before it, this Court calculates its direct-injury and solatium awards to be fully compensatory. See Wultz, 864 F. Supp. 2d at 43 (finding direct-injury damages fully compensatory and declining to award prejudgment interest); Thuneibat v. Syrian Arab Republic, 167 F. Supp. 3d 22, 54 (D.D.C. 2016) (noting solatium damages "do not typically require prejudgment interest because they are 'designed to be fully compensatory'") (quoting Wyatt, 908 F. Supp. 2d at 232); see also Akins v. Islamic Republic of Iran, 332 F. Supp. 3d 1, 45–46 (D.D.C. 2018) (denying prejudgment interest in FSIA terrorism case on same reasoning). This makes particular sense where the injuries are psychological and thus ongoing, and the compensation assumes suffering beyond the timeframe of the incident itself. See Oveissi, 768 F. Supp. 2d at 30 n.12 (noting solatium damages are awarded regardless of when attack occurred). Prejudgment interest, consequently, is not appropriate and will be denied.

F. Punitive Damages

The last item Plaintiffs request is punitive damages, and they seek $3.44 for every dollar of compensatory damages awarded. See DJ Mot. at 16–17. "[P]unitives are aimed not at compensation but principally at retribution and deterring harmful conduct." Exxon Shipping Co. v. Baker, 554 U.S. 471, 492 (2008). The Supreme Court has laid out three "guideposts" for "reviewing punitive damages" awards: "(1) the degree of reprehensibility of the defendant's misconduct; (2) the disparity between the actual or potential harm suffered by the plaintiff and the punitive damages award; and (3) the difference between the punitive damages awarded by the jury and the civil penalties authorized or imposed in comparable cases." State Farm Mut. Auto. Ins. Co. v. Campbell, 538 U.S. 408, 418 (2003). There is no doubt that Defendant's

11

misconduct is severe, and the injuries suffered grave, making punitive damages appropriate. See, e.g., Blank v. Islamic Republic of Iran, No. 19-3645, 2021 WL 3021450, at *10 (D.D.C. July 17, 2021) (punitive damages appropriate where Iranian-backed terrorist group carried out violent attack killing and injuring U.S. servicemembers).

Following this guidance, different courts in this district have employed different methods in calculating punitive damages. See, e.g., Selig, 2021 WL 5446870, at *23–24 (comparing methods that include flat rates, multipliers of compensatory damages, and equivalent awards). Having reviewed these alternatives, this Court believes that the most sensible amount is a sum equivalent to compensatory damages. Id. at *25 (awarding same); accord Christie v. Islamic Republic of Iran, No. 19-1289, 2020 WL 3606273, at *28 (D.D.C. July 2, 2020); Doe A-1 v. Democratic People's Republic of Korea, No. 18-252, 2021 WL 723257, at *10 (D.D.C. Feb. 24, 2021). The Court, accordingly, will award $136.5 million in punitive damages.

G. Final Calculation

Given all of the above discussion, the calculation of damages is reflected in the below table. Should any supplemental documents clarifying the calculation of economic losses be submitted, the Court may revise these figures.

| Plaintiff Name | Relationship to Servicemember | Solatium | Pain & Suffering | Punitive Damages | Total |
|---|---|---|---|---|---|
| Dianne Pennington | Sibling of Howard Allen | $2,500,000 | | $2,500,000 | $5,000,000 |
| D. Allen | Son of Howard Allen | $3,000,000 | | $3,000,000 | $6,000,000 |
| Melissa Kay Cuka | Spouse of Daniel Cuka | $8,000,000 | | $8,000,000 | $16,000,000 |
| Abigail Rose Cuka | Daughter of Daniel Cuka | $3,000,000 | | $3,000,000 | $6,000,000 |

| | | | | | |
|---|---|---|---|---|---|
| A.M. Cuka | Son of Daniel Cuka | $3,000,000 | | $3,000,000 | $6,000,000 |
| Colleen Schlid | Parent of Richard Schlid | $5,000,000 | | $5,000,000 | $10,000,000 |
| LaNita Herlem | Spouse of Bryant Anthony Herlem | $8,000,000 | | $8,000,000 | $16,000,000 |
| Velia F. Mesa | Spouse of Rudy Guerrero Mesa | $8,000,000 | | $8,000,000 | $16,000,000 |
| Velia A. Mesa | Daughter of Rudy Guerrero Mesa | $3,000,000 | | $3,000,000 | $6,000,000 |
| Lucy Rigby | Daughter of Rudy Guerrero Mesa | $3,000,000 | | $3,000,000 | $6,000,000 |
| Luis Aguilar | Step-Son of Rudy Guerrero Mesa | $3,000,000 | | $3,000,000 | $6,000,000 |
| Manuel Aguilar | Step-Son of Rudy Guerrero Mesa | $3,000,000 | | $3,000,000 | $6,000,000 |
| Corey Schlenker | Spouse of William Thorne | $8,000,000 | | $8,000,000 | $16,000,000 |
| Timothy Merrill | Parent of Jason L. Merrill | $5,000,000 | | $5,000,000 | $10,000,000 |
| Wanda Sue Merrill | Parent of Jason L. Merrill | $5,000,000 | | $5,000,000 | $10,000,000 |
| Alyssa Merrill | Sibling of Jason L. Merrill | $2,500,000 | | $2,500,000 | $5,000,0000 |
| Amber Piraneo | Sibling of Jason L. Merrill | $2,500,000 | | $2,500,000 | $5,000,0000 |
| Ashlea Lewis | Sibling of Jason L. Merrill | $2,500,000 | | $2,500,000 | $5,000,0000 |
| Lyle Brooks | Parent of Lucas T. White | $5,000,000 | | $5,000,000 | $10,000,0000 |

13

| | | | | | |
|---|---|---|---|---|---|
| Tamara Stout | Step-Parent of Brandon Stout | $5,000,000 | | $5,000,000 | $10,000,0000 |
| Melinda Igo | Parent of Michelle Wager | $2,500,000 | | $2,500,000 | $5,000,0000 |
| Alicia Igo | Sibling of Michelle Wager | $500,000 | | $500,000 | $1,000,000 |
| Ashley Lewis | Sibling of Michelle Wager | $500,000 | | $500,000 | $1,000,000 |
| Devin Igo | Sibling of Michelle Wager | $500,000 | | $500,000 | $1,000,000 |
| Gina Wright | Parent of Christopher D. Young | $5,000,000 | | $5,000,000 | $10,000,000 |
| Kimberly Yarbrough | Parent of Barry Mayo | $5,000,000 | | $5,000,000 | $10,000,000 |
| Taylor Brown | Son of Scott Brown | $3,000,000 | | $3,000,000 | $6,000,000 |
| Rachel Lambright | Spouse of Jerral Steele Hancock | $4,000,000 | | $4,000,000 | $8,000,000 |
| Danielle Egli | Spouse of Adam Egli | $4,000,000 | | $4,000,000 | $8,000,000 |
| K. Egli | Child of Adam Egli | $750,000 | | $750,000 | $1,500,000 |
| B. Egli | Child of Adam Egli | $750,000 | | $750,000 | $1,500,000 |
| Adam Egli | Servicemember | | $5,000,000 | $5,000,000 | $10,000,000 |
| Laura Russell Kennedy | Spouse of Jonathan Edds | $8,000,000 | | $8,000,000 | $16,000,000 |
| Monique Shantel | Spouse of Joseph Richard III | $8,000,000 | | $8,000,000 | $16,000,000 |

| | | | | | |
|---|---|---|---|---|---|
| Green Richard | | | | | |
| Estate of Joseph Avie Richard III | | | $1,000,000 | $1,000,000 | $2,000,000 |
| **Total** | | $130,500,000 | $6,000,000 | $136,500,000 | $273,000,000 |

The Court recognizes, as have others before it, that "no amount of money can alleviate the emotional impact of" the attacks. See Fraenkel, 892 F.3d at 357 (quoting Flatow, 999 F. Supp. at 32). It nonetheless hopes that the damages it awards today will assist Plaintiffs heal from this heartbreaking chapter in their lives.

### III.   Conclusion

For these reasons, the Court will enter default judgment for Plaintiffs in the amounts listed above. A separate Order so stating will issue this day.

/s/ *James E. Boasberg*
JAMES E. BOASBERG
United States District Judge

Date: January 19, 2022

15